**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL LEE HUTTON,<br><br>Plaintiff<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security Administration,<br><br>Defendant | Case No.: 3:25-cv-00627-CSD<br><br>**Order**<br><br>Re: ECF Nos. 11, 12 |

Before the court is Plaintiff's Motion for Reversal and/or Remand. (ECF No. 11) The Commissioner filed an Opposition, which the court construes as both a response and a Cross-Motion to Affirm. (ECF No. 12.) Plaintiff filed a Reply. (ECF No. 13.)

After a thorough review, the court will deny Plaintiff's motion to reverse/remand and affirm the judgment of the commissioner.

## I. BACKGROUND

On May 4, 2023, Plaintiff completed applications for disability insurance benefits (DIB) under Title II of the Social Security Act and for supplemental security income (SSI) under Title XVI of the Social Security Act, alleging disability beginning on February 23, 2019. (Administrative Record (AR) 218-38.) The applications were denied initially and on reconsideration. (AR 115-19, 123-29.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 130-32.) ALJ Matthew Gordon held a hearing on November 14, 2024. (AR 45.) Plaintiff, who was represented by counsel, appeared and testified on his own behalf at the hearing. Testimony was also taken

from a vocational expert (VE). On January 6, 2025, the ALJ issued a decision finding Plaintiff not disabled. (AR 27-39.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. (AR 1-3.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff argues the ALJ failed to articulate specific, clear and convincing reasons for discounting his testimony regarding his symptoms and limitations and failed to sustain his burden at step five.

## II. STANDARDS

### A. Disability Process

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill,* 139 S.Ct. 1148, 1151-52 (2019). A claimant may apply for disability insurance benefits (DIB) under Title II of the Social Security Act, and/or supplemental security income (SSI) benefits under Title XVI of the Act. SSI benefits are based on need, and to be eligible a claimant must be "aged, blind or disabled" and have income and resources under certain thresholds. 42 U.S.C. § 1382(a). DIB are based on earnings, and the claimant must be disabled and have contributed to the insurance trust fund through deductions in wages. 42 U.S.C. § 401(b). DIB, unlike SSI, are limited to a certain period of insurance determined by the amount of the claimant's previously taxed earnings. 42 U.S.C. § 423(c)(1). Title 20 of the Code of Federal Regulations contains SSA's regulations. Those that start with 404 are Title II regulations. Those that start with 416 are Title XVI regulations.

After a claimant files an application for disability benefits, a disability examiner at the state Disability Determination agency, working with a doctor(s), makes the initial decision on the

claimant's application. *See* 20 C.F.R. §§ 404.900(a)(1); 416.1400(a)(1). If the agency denies the claim initially, the claimant may request reconsideration of the denial, and the case is sent to a different disability examiner for a new decision. *See* 20 C.F.R. §§ 404.900(a)(2), 416.1400(a)(2). If the agency denies the claim on reconsideration, the claimant may request a hearing and the case is sent to an ALJ who works for the Social Security Administration. *See* 20 C.F.R. §§ 404.900(a)(3), 416.1400(a)(3). The ALJ issues a written decision after the hearing. *See* 20 C.F.R. § 404.900(a)(3). If the ALJ denies the claim, the claimant may request review by the Appeals Council. *See* 20 C.F.R. §§ 404.900(a)(4), 416.1400(a)(4). If the Appeals Council determines there is merit to the claim, it generally remands the case to the ALJ for a new hearing. If the Appeals Council denies review, the claimant can file an action in the United States District Court. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is

denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and 416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the

testimony of a VE or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

If the Commissioner establishes at step five that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant is unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin*., 574 F.3d 685, 689 (9th Cir. 2009).

**C. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the

reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## III. DISCUSSION

### A. ALJ's Findings in this Case

At step one, the ALJ found Plaintiff met the insured status requirements through December 31, 2023, and had not engaged in substantial gainful activity since the alleged onset date of February 23, 2019. (AR 29.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: diabetes mellitus; polyneuropathy; generalized anxiety disorder; and major depressive disorder (AR 30.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 30.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following additional limitations: the claimant can push and pull as much as he can lift and carry; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch, or crawl; and frequently finger and feel bilaterally. The claimant can have occasional exposure to vibration; and must avoid hazards such as unprotected heights or dangerous machinery. In addition, the claimant can carry out detailed but not complex instructions; should do no work at a production rate pace such as assembly line

> work or work requiring specific hourly quotas; and can have occasional changes in the work setting.

(AR 32.)

The ALJ then concluded Plaintiff had no past relevant work. (AR 37.)

At step five, the ALJ determined, based on VE testimony, that considering Plaintiff's age, education, work experience and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: Cleaner, Routing Clerk, and Marker. (AR 37-38.) As a result, the ALJ found Plaintiff not disabled from February 23, 2019, through the date of the decision. (AR 38).

**B. Plaintiff's Symptoms**

Evaluating a claimant's subjective symptom testimony "becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing Social Security Ruling (SSR) 96-7P)).[1]

"Such testimony is inherently subjective and difficult to measure." *Coleman v. Saul,* 979 F.3d 751, 755-56 (9th Cir. 2020). This evaluation is often crucial to a finding of disability. *Id.* (citing *Fair v. Bowen,* 885 F.2d 597, 602 (9th Cir. 1989)).

There is a two-step test for evaluating a claimant's subjective symptom testimony:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must

[1] SSA previously referred to this as a credibility determination. SSR 96-7P. SSA subsequently eliminated use of the term "credibility." SSA has clarified that "subjective symptom evaluation is not an examination of an individual's character." Instead, the adjudicator considers all of the evidence in evaluating the intensity and persistence of a claimant's symptoms. SSR 16-3P.

> a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (internal quotation marks and citations omitted, emphasis original); *see also Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022).

An ALJ may consider various factors in evaluating the allegedly disabling subjective symptoms, including: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; treatment, other than medication, received for relief of symptoms; any measures a claimant has used to relieve symptoms; and other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c), § 416.929(c); SSR 16-3P.

The ALJ may also consider an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quotation marks and citation omitted). The ALJ may further consider conduct by the claimant that is inconsistent with the claimant's subjective complaints. *Coleman,* 979 F.3d at 756.

Plaintiff argues that the ALJ failed to provide "specific, clear and convincing" reasons for rejecting his testimony about the severity of his symptoms.

The ALJ summarized Plaintiff's testimony as to his symptoms (AR 49-57) as follows:[2]

> The claimant testified that he has neuropathy which is debilitating. His legs swell and he keeps them elevated at least ½ of the day. He takes Gabapentin for the pain. It helps a little bit but is not a cure all. The claimant testified that he has a cane that he thinks was prescribed by a doctor. His balance is bad. He can walk for an hour maximum without a cane. Holding on to things has become an issue. In parts of his hand, he has numbing and tingling. He is able to raise his hands above his head. He takes medication for anxiety. He has panic attacks. He has sleep issues because he can't turn his brain off. He cooks microwave meals and does dishes. He is generally able to get around the store to shop for groceries.
>
> In a function report, the claimant asserted that he had lost his sense of balance and general feeling in both of his feet. His sugar glucose was hard to keep under control and he had difficulty concentrating. He reported that he would get really weak and lethargic randomly.

(AR 33.) The ALJ then found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[, . . .] the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 33.)

Plaintiff argues that neither this boilerplate language nor the ALJ's following discussion of the objective medical evidence was sufficient to provide specific, clear and convincing reasons to reject his testimony. The court disagrees.

Plaintiff is correct that the ALJ may not reject subjective pain testimony solely because no objective medical evidence supports it. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) ("[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."). But an ALJ is not "completely forbid[en]" under *Burch* "from using inconsistent objective medical evidence in the record to

[2] Plaintiff concedes the ALJ's summary was adequate. (ECF No. 11 at 5.)

discount subjective symptom testimony." *Smartt*, 53 F.4th at 498. Rather, "what *Burch* requires is that an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise." *Id*. "That is, an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Id*. (citing *Burch*, 400 F.3d at 681; *Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987)). But "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Id*. (emphasis original). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Id*. (citation omitted).

Here, the ALJ did not reject Plaintiff's testimony on the grounds that it was unsupported by the medical record. Rather, the ALJ rejected Plaintiff's testimony to the extent it was inconsistent with the medical record. And the ALJ explained as follows:

> In sum, the claimant has diabetes mellitus which initially was uncontrolled at least in part because the claimant was not following the medication regimen. Ex. 3F/9. More recently however, the claimant's diabetes appears to be well-controlled with medication. In April 2024, notes indicated that the claimant's diabetes was controlled. In May 2024, the claimant's A1C was 8.4. Ex. 15F/87. In June 2024, the claimant's A1C was improved to 7.2. The claimant also has neuropathy in his feet and hands, but Gabapentin appears to control his pain. In May 2024, notes indicated that the claimant recently had his Gabapentin dosage increased resulting in near complete resolution of his pain. Ex. 15F/92. The claimant has numbness in his lower extremities, but there are no significant observations of gait problems or use of assistive device, even though the claimant reported using a cane. During exams, the claimant had no swelling or edema in his legs. Exs. 1F/10; 2F/2; 14F/2; 15F/161, 166. During a consultative exam in April 2024, the claimant was assessed with only a mild limitation in handling and fingering objects. Ex. 14F/1-2.

(AR 35.)

ALJs are not required "to perform a line-by-line exegesis of the claimant's testimony . . . [or] to draft dissertations when denying benefits"; however, "providing a summary of medical evidence … is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Lambert v. Saul,* 980 F.3d 1266, 1277 (9th Cir. 2020) (internal citations and quotation marks omitted). It is further insufficient for an ALJ to simply include a conclusory statement that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment, without identifying 'sufficiently specific reasons' for rejecting the testimony, supported by evidence in the case record." *Brown-Hunter v. Colvin*, 806 F3d 487, 493 (9th Cir. 2015) (quotation marks and citation omitted). The ALJ must connect the testimony to the particular parts of the record. *Id.*

While the ALJ here did include boilerplate language and a summary of the objective medical evidence in making his finding, that is not all he did. The ALJ's summary specifically identified what objective medical evidence contradicted Plaintiff's subjective symptom testimony – specifically, that Plaintiff's diabetes was well controlled once Plaintiff began to comply with his medication regime, that Gabapentin almost completely resolved Plaintiff's neuropathy pain, that Plaintiff had no swelling or edema in his legs and did not appear to have any significant gait problems or need for an assistive device despite his report of needing a cane, and that his limitation in handling and fingering objects was mild.

The ALJ set forth specific, clear and convincing reasons for concluding Plaintiff's symptom testimony was not fully consistent with the objective medical record. Accordingly, reversal is not warranted on this basis.

/ / /

**C. Step Five**

The ALJ has a duty to resolve a conflict between a VE's job number estimates and the claimant's job number estimates where the claimant's evidence is both significant and probative. *Wischmann v. Kijakazi*, 68 F.4th 498, 505 (9th Cir. 2023) (citing *Buck v. Berryhill*, 869 F.3d 1040, 1051-52 (9th Cir. 2017) (collecting cases); *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193-94 (9th Cir. 2022). Whether new evidence submitted by a claimant has "'significant probative' value" is evaluated on a case-by-case basis, based upon several factors. *Wischmann*, 68 F.4th at 506; *see also Powley v. Bisignano*, 169 F.4th 1158, 1167-68 (9th Cir. 2026). "[W]hether a claimant replicates a VE's methodology or pulls from the same sources are" two of several relevant factors," but they are not required and are not dispositive for a finding that evidence is probative. *Powley*, 169 F.4th at 1167-68.

In *Buck*, the VE testified there were 600,000 bottling-line attendant jobs, 8,800 bottle-packer jobs, and 235,000 conveyor-belt maker jobs in the national economy. 689 F.3d at 1047. Using the same software, Buck's attorney found significantly different job numbers. Buck was allowed to submit his objections post-hearing. The ALJ denied benefits without addressing the post-hearing objections. The Ninth Circuit reversed, finding the discrepancy "too striking to be ignored" and holding that the ALJ needed to address the inconsistency. *Id*. at 1052.

In *Kilpatrick*, the Ninth Circuit found the claimant had not established her evidence was "significant and probative" where her attorney did not replicate the VE's same methodology but used his own unique methods, the attorney had no "identified expertise in calculating job figures in the national economy," and there were "obvious reasons to question" the attorney's methodology, which had previously been called into doubt in other court cases. *Id.* at 1193-95. In

addition, the claimant's attorney admitted that his numbers might not be completely accurate. *Id.* at 1194.

In *White v. Kijakazi*, 44 F.4th 828 (9th Cir. 2022), the Ninth Circuit held that the claimant's evidence "produced using a data source and methodology frequently relied on by the SSA," but which differed substantially from those of the VE, required remand to address the discrepancy and resolve the inconsistency between the job estimates provided by the claimant and the VE. *Id*. at 837.

In *Wischmann*, the Ninth Circuit found a letter from the claimant's attorney and six pages of printouts that did not indicate their source, the process by which the data were generated, or how the information on the pages supported the attorney's claim regarding job numbers in the national economy, particularly where the numbers in the printouts did not match the numbers in the attorney's letter, was not probative evidence that the ALJ was required to address. *Wischmann*, 68 F.4th at 506-07. The court noted that while the attorney identified the software program he used to obtain the numbers, which was the same program used by the VE, a "software program . . . is merely a tool that must be used appropriately to produce reliable results. . . . [e]xperience in using the program and interpreting the output would ordinarily be necessary to produce probative results." *Id.* at 507. The court explained that the attorney's letter did not state he replicated a methodology used by the VE, did not identify what queries were entered or what variables were changed, and did not state what version of the program was used, meaning the information could have been out of date. *Id.* Further, it explained, the six pages contained only raw data, which was incomprehensible to a lay person, and the claimant "did not provide the interpretation necessary to make the pages meaningful to a court." *Id.*

In *Powley*, by contrast, the Ninth Circuit found probative counterevidence that "was produced 'using … data source[s] and [a] methodology frequently relied on by the SSA,'" where there were "no other factors which call[ed] the accuracy of [the] evidence into question." 169 F.4th at 1167. Specifically, the claimant's attorney used the same source – SkillTRAN – that was used by the VE and "other sources commonly utilized by the SSA, like data from the U.S. Census Bureau." *Id.* at 1168.

Here, the VE testified that with Plaintiff's limitations there would be, in the national economy, about 178,000 jobs as a Cleaner, 140,000 jobs as a Routing Clerk, and 137,800 jobs as a Marker. (AR 59.) The ALJ ultimately adopted those numbers in his final decision. (AR 38.) As set forth above, Plaintiff's limitations included "no work at a production rate, such as an assembly line work or work requiring specific hourly quotas." (AR 32, 59.) The VE testified that she based her findings on the Dictionary of Occupational Titles (DOT) and, to the extent not addressed by the DOT, on her own experience as a vocational counselor. (AR 59.) She testified that the DOT does not address "production rate." (*Id.*)

In his letter to the Appeals Council, Plaintiff asserted that the VE's job numbers "lack[ed] any statistical basis." (AR 375.) He argued that the production rate limitation meant Plaintiff "cannot engage in fast pace work." (*Id.*) He argued that based on "ONET 29.3 and ORS," there were no jobs as a Cleaner, only 3,123 jobs as a Routing Clerk, and only 856 jobs as a marker. (AR 377-82.)

The letter does not explain how Plaintiff's attorney reached the differing job numbers, other than a citation to ONET 29.3 and ORS, but it attaches three printouts from "Occu Collect" -- one for each of the job categories. Plaintiff does not explain what "Occu Collect" is, although it purports to be based on data from ONet 29.3, ORS 2024 and OEWS 2024.

Nothing about Occu Collect itself or the methodology it employs is explained. Nor does Plaintiff's attorney state he used the same methodology or data sources as the VE or that he has the training or experience of a VE or experience using Occu Collect and interpreting its results. *See Romkema v. Bisignano*, 2025 WL 3269217, at *2 (9th Cir. Nov. 24, 2025) (unpublished disposition) ("Romkema used Occu Collect to retrieve data from O*Net, but the vocational expert did not use either of these programs. Romkema does not explain how Occu Collect obtains O*Net data or whether the data are filtered or modified. Thus, his printouts lack the indicia of reliability that Wischmann requires.") And "[w]ithout any indication otherwise, counsel for a claimant will ordinarily lack 'identified expertise in calculating job figures in the national economy." *Id.* at *1. The information in the printouts is, further, borderline incomprehensible to a lay person, and counsel has not provided the information necessary to interpret the results.

Most importantly, however, as to each of the job categories it appears that Plaintiff's attorney included a limitation of "generally slow work pace," and it is this limitation that – for all three categories – drastically reduces the number of jobs available in the economy. (AR 377-82.) But nowhere is this phrase defined, and it is not at all clear that it is equivalent to the actual limitation identified by the ALJ, which was "no work at a production pace." The ALJ did not adopt a "slow work" limitation, and in fact, when asked whether a significant number of jobs would exist if such a limitation were applied, the VE answered in the negative.[3] It is not obvious to the court that "no production rate work" is the same thing as "generally slow work pace."

---

[3] When asked to assume an individual who is "slow to – because of their problems in combination, they'd be unable to work at a regular competitive rate 20 percent of the day on a consistent basis," the VE responded there would be no competitive employment for such an individual in the national economy. (AR 60-61.) The ALJ's residual functional capacity did not include this limitation.

Absent such an explanation, the court cannot find that Plaintiff's alternative job numbers were probative, such that the ALJ erred in failing to address the discrepancy between Plaintiff's job numbers and the VE's job numbers.

Accordingly, reversal on this basis is also not warranted.

## IV. CONCLUSION

Plaintiff's motion for reversal and/or remand (ECF No. 11) is **DENIED; and**

The Commissioner's cross-motion (ECF No. 12) is **GRANTED**;

The Clerk shall enter JUDGMENT accordingly.

**IT IS HEREBY ORDERED.**

Dated: September 11, 2026

Craig S. Denney
United States Magistrate Judge